[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11094

Non-Argument Calendar

_____

YUNY EMERITA CONTRERAS-MARTINEZ,
ANGEL IVAN ARGUETA-CONTRERAS,
BRAYAN MAXIMILIANO CONTRERAS-MARTINEZ,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

Agency Nos. A212-907-907, A212-907-899, A212-975-071

_____

Before ROSENBAUM, GRANT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Petitioner Yuny Contreras-Martinez, on behalf of herself and her two sons, petitions this Court for review of an order by the Board of Immigration Appeals (the "BIA") affirming the denial of her application for asylum and withholding of removal pursuant to 8 U.S.C. §§ 1158 and 1231(b)(3).  Petitioner fails to challenge the BIA's determination that the harm she and her family allegedly suffered does not have the requisite nexus to a protected ground to sustain her claim for asylum and withholding of removal, and that failure is fatal to her petition.  In addition, substantial evidence supports the BIA's decision that Petitioner did not meet the nexus requirement.  Accordingly, we deny the petition.

## BACKGROUND

Petitioner Yuny Contreras-Martinez (Yuny) and her sons, Angel Ivan Argueta-Contreras (Angel) and Brayan Maximiliano Contreras-Martinez (Brayan), natives and citizens of Honduras, entered the United States without inspection in January 2017.  At the time of their entry, Petitioner was pregnant with a third child, her daughter Genesis, who subsequently was born in the United States.

After entering the United States, Petitioner and her sons were served with notices to appear stating that they were removable under 8 U.S.C. § 1182(a)(6)(A) as "alien[s] present in the United

States without being admitted or paroled." The family subsequently was placed into removal proceedings, during which they conceded removability as noncitizens present in the United States without admission or parole.

Petitioner filed an application for asylum and withholding of removal under 8 U.S.C. §§ 1158 and 1231(b)(3), and relief under the United Nations Convention Against Torture ("CAT"). In support of the application, Petitioner stated that her family had left Honduras because Angel was being persecuted by members of the gang "la Mara MS." She explained that Mara MS gang members had shot at Angel and murdered one of his friends in 2011, and that on two later occasions in 2013 and 2016, they had waited for him outside of his school and threatened him. She also claimed that she had been abused by her boyfriend in Honduras after she became pregnant and refused to have an abortion. She stated that she feared future mistreatment and torture from gang members and her former boyfriend if the family returned to Honduras.

In a memorandum filed in support of her asylum application, Petitioner argued that she qualified for asylum because she had been persecuted on account of a protected "political opinion" and membership in a social group she defined as consisting of the "[n]uclear family of Contreras Martinez." She specified that the political opinion referenced in the application was her objection, as a law-abiding Honduran, to the activities of gangs and other criminal organizations operating in the country.

An IJ held a hearing on Petitioner's application, during which Petitioner testified that she and her sons left Honduras because they were in danger from the Mara MS gang and her ex-boyfriend. As to the former, Petitioner stated, in accordance with the facts set out in her asylum application, that Mara MS gang members had murdered Angel's friend in 2011, when Angel was approximately twelve years old, and then warned Angel to remain silent about the killing. According to Petitioner, the same gang members followed Angel on his way to school on one occasion in 2013, but he was able to escape and get into school. Gang members then followed Angel home from school a second time in 2016, and tried to recruit him to work as a "watcher" for the gang. Petitioner admitted on cross-examination that Angel was not harmed during any of these encounters.

Regarding the domestic violence alleged in her asylum application, Petitioner testified that in 2016 she told her boyfriend she was pregnant, and he responded by beating her, threatening her children, and ordering her to get an abortion. She stated that she did not report the beating or threats to the police because her boyfriend's father was a police officer, and she was intimidated by him. Petitioner explained that in a later incident, her boyfriend beat and raped her because she had not aborted their child. Petitioner said she called the police after that incident, but they did nothing. Petitioner testified further that she did not think she and her family could live safely anywhere in Honduras because her ex-boyfriend had a lot of contacts and could find her anywhere.

Angel also testified at the hearing.[1]  He confirmed that in 2013, Mara MS gang members had threatened to hurt him if he said anything about the gang-related murder he witnessed in 2011.  He also corroborated Petitioner's statement that, in 2016, gang members had tried to recruit him to work as a watcher for the Mara MS gang.

At the conclusion of Angel's testimony, the IJ asked Petitioner's counsel whether any evidence in the record showed that the incidents described by Petitioner and Angel "had anything to do with the nuclear family of Contreras- Martinez or imputed political opinion."  Counsel responded that the Contreras-Martinez family did not appear to have been specifically targeted, but that they were harmed because of (1) their imputed political opinion in opposition to gang-related crime as law-abiding Hondurans, and (2) Angel's refusal to be recruited into the Mara MS gang.  Upon further questioning by the IJ, counsel conceded that the 2011 and 2013 incidents involving Angel and the Mara MS gang members were random criminal acts unrelated to an imputed political opinion or family affiliation.  Nevertheless, counsel argued that the 2016

---

[1]  Part of Angel's testimony was not transcribed, but Petitioner did not raise any issue concerning the omission below.  Nor does Petitioner challenge on appeal the BIA's determination that a remand was unnecessary to address the omission because Petitioner did not allege that any omitted testimony would have helped her meet her burden of proof.  As such, we do not address the issue further.  *See United States v. Campbell*, 26 F.4th 860, 865 (11th Cir. 2022) (noting that issues not raised in the initial brief on appeal ordinarily are deemed abandoned).

incident occurred because Angel refused to join the gang, and that all three attacks taken together could be attributed to an imputed political opinion in favor of law and order.

The IJ denied Petitioner's application for relief. First, citing authority from this Court holding that opposition to gangs and/or refusing to join a gang does not, without more, translate into an imputed political opinion, the IJ determined that Petitioner had not established a protected political opinion. Second, the IJ determined that the "nuclear family of Contreras-Martinez" was not a cognizable social group because it was amorphous, indistinct, and lacked particularity. Finally, the IJ concluded that Petitioner did not show the required nexus between the harm she and her sons suffered or feared and any imputed political opinion or their membership in the Contreras-Martinez family.

Having found Petitioner ineligible for asylum, the IJ denied her application for withholding of removal. The IJ also denied CAT relief, explaining that there was insufficient evidence to show that the Honduran government would perpetrate or acquiesce in any potential future harm to Petitioner and her family. Based on these decisions, the IJ ordered Petitioner and her sons removed to Honduras.

Petitioner appealed the IJ's decision to the BIA. In her brief to the BIA, Petitioner argued that the IJ erred by finding she had not suffered persecution on account of a protected ground because (1) the "immediate family members of Contreras-Martinez" was a cognizable social group and (2) she and her sons had been harmed

23-11094                Opinion of the Court                7

because of their membership in that group. She also argued that the IJ erred by (1) finding she failed to provide corroborating documents, (2) giving insufficient weight to the evidence, (3) not allowing evidence of Angel's psychological trauma, and (4) concluding she and her children could relocate within Honduras. She did not include any argument related to her political opinion claim.

The BIA affirmed the IJ on all grounds. As an initial matter, it determined that Petitioner had waived review of the IJ's denial of CAT relief, as well as the IJ's denial of asylum based on an imputed political opinion, because she did not address those findings in her brief. After dispensing with Petitioner's evidentiary arguments, the BIA explained that (1) it with the IJ that the Contreras-Martinez family-based social group proposed by Petitioner lacked sufficient particularity and distinction to be a cognizable protected social group under the INA, and (2) the IJ did not err by finding that there was no nexus between the proposed family social group and any past or future harm suffered by Petitioner and her sons. Petitioner and her family, the BIA concluded, were "unfortunate victims of acts of violence committed by private actors in Honduras." As such, they were not entitled to asylum or withholding of removal under this Court's governing precedent.

Petitioner seeks review of the BIA's decision in this Court. In the brief filed in support of her petition to the Court, Petitioner argues that the BIA erred when it ruled that criminal acts committed by private individuals—such as the gang members who threatened Angel and her ex-boyfriend who physically abused her—do

not constitute persecution on account of a statutorily protected ground, as required to support an asylum claim. According to Petitioner, such acts can qualify as persecution if the government is unable or unwilling to protect a petitioner from the perpetrators, as she claims the Honduran government was in her case. Petitioner also claims she suffered physical abuse from her boyfriend because of her refusal to have an abortion, and she argues, for the first time on appeal to this Court, that the abuse could thus be related to her religious or political opinion against abortion or to her sex, given that women are the only individuals who can bear a child.[2]

We do not consider Petitioner's claim that she suffered physical abuse on account of her religious or political opposition to abortion or on account of her sex, because Plaintiff failed to raise that claim at any point in the proceedings below. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 424 (2023) ("Under the plain language of [8 U.S.C.] § 1252(d)(1), a noncitizen must exhaust all administrative remedies available to the alien as of right." (alteration adopted and quotation marks omitted)). We likewise decline to consider Petitioner's law and order-based political opinion claim because, although Petitioner raised that claim in her hearing before the IJ, she failed to exhaust the claim by presenting it to the BIA. *See id.* Although the INA's exhaustion requirement is not a jurisdictional

---

[2] Petitioner does not challenge the BIA's dismissal of her claim for relief under the CAT. Accordingly, we do not address that claim further. *See Campbell*, 26 F.4th at 865.

rule, and is thus subject to waiver, the Government has not waived the requirement here.

Petitioner exhausted her family membership-based claim by arguing it to the IJ and the BIA. However, Petitioner has abandoned that claim on appeal by failing to address it in the brief she submitted to this Court in support of her petition for review of the BIA's decision. *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned."). There are no circumstances here that would warrant consideration of the family-membership claim despite Petitioner's abandonment of it. *See United States v. Campbell*, 26 F.4th 860, 875 (11th Cir. 2022) (noting that although there are some exceptions, "[i]n most cases, an issue abandoned on appeal should . . . be dismissed without reaching the merits"). We note as well that, based on our independent review of the record, substantial evidence supports the BIA's determination that Petitioner failed to establish a nexus between her proposed family-based social group and any past or future harm. Accordingly, as discussed more fully below, Petitioner's request for review of the BIA's decision must be denied.

## DISCUSSION

### I.    Standard of Review

"When the BIA issues a decision" in a case arising under the INA, "we review only that decision, except to the extent the BIA expressly adopts the IJ's decision." *Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1344 (11th Cir. 2007). We review the BIA's legal conclusions

*de novo* and its factual determinations for substantial evidence. *Id.* Under the substantial evidence standard, we must affirm factual findings so long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quotation marks omitted). Conversely, "[w]e will reverse the BIA's factual findings only if the record compels reversal." *Lopez v. U.S. Att'y Gen.*, 914 F.3d 1292, 1297 (11th Cir. 2019) ("[T]he mere fact that the record may support a contrary conclusion is insufficient to justify reversal of the BIA's findings.").

## II.    Statutory Framework

To obtain asylum, an applicant must prove that she meets the definition of a "refugee" under the INA. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th Cir. 2007) (quoting 8 U.S.C. § 1158(b)(1)(A)). The INA defines a refugee as:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

8 U.S.C. § 1101(a)(42)(A).

Similarly, an applicant for withholding of removal must prove that she would "more likely than not be persecuted upon being returned to h[er] country of origin" and that the threatened

persecution is on account of her "race, religion, nationality, membership in a particular social group, or political opinion." *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013) (citing 8 U.S.C. § 1231(b)(3)(A) (quotation marks omitted)). "Because the more likely than not standard is more stringent than the well-founded fear standard for asylum, an applicant unable to meet the well-founded fear standard is generally precluded from qualifying for either asylum or withholding of removal." *Sanchez Jimenez*, 492 F.3d at 1239 (quotation marks omitted).

The standards for both asylum and withholding of removal "contain a causal element known as the nexus requirement." *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021). To meet the nexus requirement, the applicant must establish that one of the protected grounds set out in the INA, "was or will be at least one central reason for persecuting the applicant." *Id.* (quotation marks omitted). A protected ground is a central reason for persecution if it is "essential to the motivation of the persecutor." *Id.* (quotation marks omitted). On the other hand, a protected ground is not a central reason if it plays a "minor role" in the alleged persecution, or if it is "incidental, tangential, superficial, or subordinate to another reason" for the persecution. *Id.* (quotation marks omitted).

## III.    Petitioner's Asylum and Withholding of Removal Claims

As an initial matter, we reject Petitioner's argument that the BIA somehow erred when it cited case law from this Circuit holding that criminal acts committed by private individuals do not

constitute persecution based on a statutorily protected ground. The BIA's statement of the law is consistent with our precedent. *See Rodriguez*, 735 F.3d at 1310 ("Evidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution based on a statutorily protected ground." (alteration adopted and quotation marks omitted)).

Furthermore, we hold that the procedural history of this case is determinative of its outcome and fatal to Petitioner's request for review of the BIA's decision. To recap, Petitioner argued to the IJ that she and her sons were entitled to asylum and withholding of removal because they had been persecuted on account of (1) an imputed political opinion as law-abiding Hondurans who objected to gangs and criminal organizations in Honduras, and (2) their membership in the Contreras-Martinez family. The IJ rejected both claims and Petitioner appealed the IJ's decision to the BIA. In her appeal to the BIA, however, Petitioner failed to assert her political opinion claim, and relied solely on her family membership-based claim. In so doing, Petitioner abandoned her political opinion claim.

The BIA noted in its decision that Petitioner had abandoned her political opinion claim, and then it rejected Petitioner's family membership claim, explaining that it agreed with the IJ that Petitioner had not shown a nexus between her membership in the Contreras-Martinez family and any harm she and her sons suffered or

feared. Petitioner appealed, asking this Court to review the BIA's denial of her application for asylum and withholding of removal. But Petitioner again changed course in her appeal to this Court, failing to brief and thus abandoning her family membership claim that was rejected by the BIA, and instead attempting to resurrect a political opinion claim, albeit based on a different political opinion (opposition to abortion) than the opinion she initially presented to the IJ (opposition to crime).

The upshot is that Petitioner has abandoned all the claims she presented to the IJ, and failed to exhaust the only claim she asserts on appeal—that is, her claim that she was persecuted on account of her religious or political opposition to abortion or on account of her sex. As such, all of Petitioner's claims are due to be denied. *See* 8 U.S.C. § 1252(d)(1) (noting that this Court may only review a final order of removal if "the alien has exhausted all administrative remedies available" to her).

We note that even if Petitioner had not abandoned her family membership-based asylum claim—the only claim she argued to the BIA—we would affirm the BIA's determination that she failed to show the required nexus between any harm she suffered and her membership in the Contreras-Martinez family. Again, the BIA's nexus determination is a finding of fact, which we review under the substantial evidence standard. *See Rodriguez*, 735 F.3d at 1311. As such, reversal on this issue is warranted only if the record "compels" a finding that Petitioner was or will be persecuted because of

her membership in the Contreras-Martinez family.  *See id.* at 1308. It does not.

Indeed, the record fully supports the BIA's finding that there is no nexus between the persecution Petitioner claims she and her sons suffered and their membership in the Contreras-Martinez family.  Petitioner and Angel both testified that the purpose of the gang's encounters with Angel in 2011 and 2013 was to intimidate Angel so he would stay quiet about a gang-related murder he witnessed, and that the gang's motivation in contacting Angel in 2016 was to recruit him to work as a watcher.  As to the domestic abuse, Petitioner testified that her boyfriend threatened and beat her because she refused to get an abortion, not because she was part of the Contreras-Martinez family. Accordingly, substantial evidence supports the BIA's determination that Petitioner failed to establish a nexus between the alleged persecution they suffered and feared and their status as Contreras-Martinez family members.

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for this Court to review the BIA's denial of Petitioner's claims for asylum and withholding of removal.

**PETITION DENIED**