[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-12528

Non-Argument Calendar

_____

MANUEL LABRADA,

                Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A046-694-176

_____

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Manuel Labrada seeks review of an order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ") denial of his motion to reopen his removal proceedings based on ineffective assistance of counsel. Labrada argues that his former counsel was ineffective for advising him that he was removable as an aggravated felon for a conviction involving fraud or deceit in which the loss to the victims exceeded $10,000. The IJ declined to reopen Labrada's proceedings, finding that he had not established prejudice because, in the IJ's view, the records of Labrada's conviction established losses to victims that exceeded $10,000. After careful review, we deny the petition for review.

**I.**

Labrada, a native and citizen of Cuba, was admitted into the United States in 1998 and became a lawful permanent resident as of 1999 under the Cuban Adjustment Act. In November 2012, Labrada pled guilty to and was convicted of conspiracy to commit access-device fraud, *see* 18 U.S.C. § 1029(b)(2), possession of fifteen or more unauthorized access devices, *see id.* § 1029(a)(3), and aggravated identity theft, *see id.* § 1028A(a)(1). He was sentenced to a total of 48 months of imprisonment, plus a term of supervised release if not deported.

In the plea agreement, Labrada "agree[d] to the entry of a restitution order in the amount of $68,277.74, the payment for

which is jointly and severally liability with any co-defendant who is convicted in the case." Labrada also executed a separate "factual proffer" outlining the facts the government "would have proven . . . beyond a reasonable doubt" at trial.

According to the factual proffer, Labrada and Mazuki Lopez engaged in a conspiracy to commit access-device fraud in January and February of 2011. Labrada obtained victims' credit- and debit-card account numbers and provided Lopez with counterfeit cards that were re-encoded with this information. Lopez used the counterfeit cards "at various gas stations" to buy diesel gasoline, which he sold to truck drivers at a discount, and Lopez and Labrada split the profits. At the time of his arrest, Labrada had in his possession seven counterfeit cards, as well as two laptops "containing a large number of credit card numbers," including a Bank of America debit account number belonging to "J.M." Lopez had twenty-one counterfeit cards in his possession. In total, Labrada and Lopez "maintained in their possession the means of identification of 170 people on February 11, 2011."

In imposing sentence, the district court ordered Labrada to "pay restitution in the amount of $68,277.74." The restitution order identified four specific payees (and corresponding amounts): American Express ($2,257.69), Bank of America ($3,990.46), Chase Bank USA ($647.43); and (4) Citigroup ($61,382.16).

In 2015, the government began proceedings to remove Labrada, asserting that he had been convicted of an "aggravated felony" that "involves fraud or deceit in which the loss to the victim

or victims exceeds $10,000." *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(M)(i), (U). After retaining immigration counsel, Andres Alfonso, Jr., Labrada signed a stipulation conceding that he was removable as charged.[1] As a result, the government moved for a stipulated removal order and waiver of hearing under 8 C.F.R. § 1003.25(b), and an immigration judge granted the motion and ordered Labrada's removal.

In February 2022, represented by new counsel, Labrada filed a motion to reopen and terminate removal proceedings. Labrada argued that he was not removable based on his fraud offenses because the restitution order and documents from his criminal case did not sufficiently tie the $68,277.74 loss to his convictions. Labrada alleged that Alfonso provided ineffective assistance by convincing him he was removable and ineligible for relief, and by advising him to request a stipulated order of removal on the incorrect belief that he could request a waiver and readjust status after five years. But when five years passed, Labrada was unable to reach Alfonso, so he contacted new counsel, who discovered the alleged ineffective assistance and filed the motion to reopen.

An IJ reviewed Labrada's records and then denied the motion to reopen. In the IJ's view, Labrada failed to show prejudice from any alleged ineffective assistance because his conspiracy conviction "was, and is still, properly considered an aggravated felony." Labrada had conceded that his convictions involved fraud or

---

[1] Labrada previously filed a similar *pro se* motion for a stipulated removal order before immigration proceedings formally began.

deceit, and the IJ concluded that the loss to the victims of his admitted conspiracy exceeded $10,000.  The IJ found that it was clear from the criminal records, including the terms of the restitution order and the nature and scope of the conspiracy to which Labrada pled guilty, that the restitution amount of $68,277.74 was tied to the losses the listed creditors incurred as a result of Labrada's admitted scheme.

Labrada appealed to the BIA, which affirmed the IJ's decision without opinion.  *See* 8 C.F.R. § 1003.1(e)(4).  Labrada now petitions this Court for review.

## II.

We review the denial of a motion to reopen an immigration proceeding for an abuse of discretion, asking only whether the agency "exercised its discretion in an arbitrary or capricious manner." *Jiang v. U.S. Att'y Gen.*, 568 F.3d 1252, 1256 (11th Cir. 2009). The agency abuses its discretion "when it misapplies the law in reaching its decision." *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013).  "When the BIA summarily affirms the IJ's decision without an opinion, the IJ's decision becomes the final removal order subject to review." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005).

We have jurisdiction to review "whether the BIA erred in determining that a petitioner's conviction is an aggravated felony." *Balogun v. U.S. Att'y Gen.*, 425 F.3d 1356, 1360 (11th Cir. 2005).  "Although we review *de novo* whether a prior conviction qualifies as an aggravated felony, we review administrative fact findings under

the highly deferential substantial evidence test." *Garcia-Simisterra v. U.S. Att'y Gen.*, 984 F.3d 977, 980 (11th Cir. 2020) (cleaned up). The agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

A noncitizen "convicted of an aggravated felony at any time after admission" is removable. 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000," or a conspiracy to commit such an offense. 8 U.S.C. § 1101(a)(43)(M)(i), (U). The government must present clear and convincing evidence that the loss amount exceeds $10,000. *See* 8 U.S.C. § 1229a(c)(3)(A); *Nijhawan v. Holder*, 557 U.S. 29, 42 (2009).

In *Nijhawan*, the Supreme Court held that the loss amount under § 1101(a)(43) referred to the specific, factual circumstances surrounding the fraud, rather than an element of the fraud offense. *Nijhawan*, 557 U.S. at 40. So instead of looking to the "statute defining the offense," we must consider the "facts and circumstances underlying an offender's conviction," *id.* at 34, including the "entire record from a person's conviction," *Garcia-Simisterra*, 984 F.3d at 981. In *Nijhawan*, for example, the Court found clear and convincing evidence for a loss amount greater than $10,000 based on a factual stipulation at sentencing and a restitution order, and the lack of "any conflicting evidence." *Nijhawan*, 557 U.S. at 42–43.

Nevertheless, according to *Nijhawan*, the loss amount "must be tied to the specific counts covered by the conviction." *Id.*

(quotation marks omitted).  That means the loss cannot be based on "dismissed counts or general conduct." *Martin v. United States*, 949 F.3d 662, 668 (11th Cir. 2020).

In *Obasohan*, for instance, we said that an immigration judge could not rely solely on a restitution order to establish the loss amount for an aggravated felony, where the restitution order was based on "*additional* conduct that was alleged only in the [presentence report]" and not "charged, proven or admitted."  479 F.3d at 790–91, *overruled on other grounds by Nijhawan*, 557 U.S. at 33, 36. Because the restitution order was the "only document that made reference to any loss," we found "no basis in this record from which the IJ could have found by 'clear, unequivocal and convincing' evidence that the restitution order was based on convicted or admitted conduct." *Id*. at 791.

Here, the IJ did not abuse his discretion in denying the motion to reopen.  The IJ reasonably concluded that Labrada was not prejudiced by former counsel's advice that he was removable as an aggravated felon.  Labrada has not shown that the IJ erred in concluding that his conviction for conspiracy to commit wire fraud "involve[d] fraud or deceit in which the loss to the victim or victims exceeds $10,000," and so was an aggravated felony.  *See* 8 U.S.C. § 1101(a)(43)(M)(i), (U).  And he does not dispute that his convictions involved fraud or deceit.

In agreeing to plead guilty, Labrada admitted to engaging in a conspiracy where the object was a scheme to defraud in which he and his codefendant used counterfeit credit and debit cards to

purchase gasoline for resale.  He admitted that, as part of this conspiracy, he and his coconspirator possessed 28 counterfeit cards and the means of identification of at least 170 people.  He also agreed to pay $68,277.74 in restitution as part of his plea agreement, jointly and severally with "any co-defendant who is *convicted* in the case"— that is, who participated in the same conspiracy to which Labrada admitted, and the court awarded "68,277.74 to four specific payee banks."  While the record is otherwise silent about the precise grounds for the restitution awarded, Labrada offers no evidence tending to suggest that the restitution order was based on uncharged conduct or was not tied to his counts of conviction.  And on this record, without more, it's reasonable to infer that the amount Labrada agreed to pay in restitution as part of his guilty plea was for losses caused by his charged and admitted conduct.

Labrada's reliance on *Obasohan* is misplaced.  Unlike the restitution order in *Obasohan*, which was based on conduct and loss amounts "that were not charged, proven or admitted," *id.* the record here reflects that the restitution order in Labrada's case was based on charged conduct that Labrada admitted as part of his guilty plea. *See Obasohan*, 479 F.3d at 790–91.  The mere fact that a restitution order is based on a preponderance of the evidence does not mean it lacks probative force when evaluating the specific, factual circumstances surrounding the fraud.  *See Nijhawan*, 557 U.S. at 40; *Singh v. U.S. Att'y Gen.*, 677 F.3d 503, 515 (3d Cir. 2012) ("[A] restitution order 'may be helpful' to the loss inquiry, but is not definitive.").  Thus, as in *Nijhawan*, "[i]n the absence of any conflicting evidence (and [Labrada] mentions none)," the IJ reasonably

concluded that clear and convincing evidence established that Labrada was convicted of a crime involving fraud or deceit in which the loss to the victims exceeded $10,000. *See* 557 U.S. at 40.

For these reasons, the IJ did not abuse his discretion in concluding there was not a reasonable probability that the outcome of the proceedings would have been different had Labrada's counsel challenged whether Labrada was removable as an aggravated felon. Without a showing of prejudice, Labrada is not entitled to relief on his claim of ineffective assistance. Accordingly, we deny the petition for review.

**PETITION DENIED.**